NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| HUNTINGTON LEARNING CENTERS, INC.,<br><br>          Plaintiff,<br>v.<br><br>FUTUREDGE, LLC, PETER L. HANSON and MARSHA A. HANSON,<br><br>          Defendant. | Civ. No. 04-4300 (WGB)<br><br>O P I N I O N |

APPEARANCES:

Craig R. Tractenberg Esq.
Arthur L. Pressman (admitted pro hac vice)
Gregg A. Rubenstein (admitted pro hac vice)
NIXON PEABODY LLP
100 Summer St.
Boston, MA 02110
     Counsel for Plaintiff

Kenneth L. Leiby, Jr., Esq.
ROSEN EINBINDER & DUNN P.C.
159 Millburn Ave.
Millburn, NJ 07041
     Counsel for Defendant

**BASSLER, SENIOR DISTRICT JUDGE:**

     Plaintiff Huntington Learning Centers, Inc. ("Huntington"), seeks a preliminary injunction against Defendants Futuredge, LLC, Peter L. Hanson and Marsha A. Hanson (collectively "Futuredge"), to prohibit Futuredge from operating a learning center located in Poway, California.  Huntington contends that Futuredge breached

its contract with Huntington by violating covenants not to compete and covenants preventing the use of confidential information.

Jurisdiction is proper here under 28 U.S.C. § 1332 as the parties are citizens of different states.  The court has personal jurisdiction over Futuredge because Futuredge has sufficient contacts with New Jersey through years of maintaining a relationship with Huntington.  Futuredge waived any objection to venue.

For the following reasons, the Court **denies** Huntington's application for a preliminary injunction.

I.   BACKGROUND

Huntington, a Delaware corporation with its principal place of business in New Jersey, provides remedial education services throughout the country.  Huntington operates and franchises approximately 235 learning centers throughout the United States.  Futuredge is a California limited liability company of which defendant Peter Hanson is a manager and member.  Defendant Marsha Hanson is his spouse.

Futuredge first entered into a franchise agreement with Huntington in September of 1994.  This agreement was drafted and executed in New Jersey and called for the placement of a franchise in Poway, California.  The "Poway Agreement" established a ten year term and contained several provisions

2

which are relevant here:

1. Paragraph 3 contains the terms for renewal. Paragraph 3.05(c) states that the Franchisee (i.e. Futuredge) shall have executed a general release as a condition precedent to renewal.

2. Paragraph 3.07 states that if Futuredge continues to operate after the initial term has expired without exercising the option to renew, then Futuredge will be deemed to be operating on a month-to-month basis as a "holdover". Paragraph 3.07 further states that the franchise agreement may be terminated at any time upon ten days notice by the Franchisor (i.e. Huntington).

3. Paragraph 12.21(a) states that for three years after the end of the franchise agreement, Futuredge shall not operate or control a business that is the same as or similar to the franchised center within 25 miles of the franchise territory. (Paragraph 12.21(f) grants Huntington the right to reduce the scope of this restriction, a right which Huntington exercised by reducing the scope to one year and within one mile of the Poway center.)

4. Paragraph 12.21(c) states that Futuredge shall not divulge or use for the benefit of any other person any confidential information.

     5.    Paragraph 16.07 states that Futuredge must execute a general release of all claims against Huntington in order to renew the agreement.

     6.    Paragraph 18.06 states that the franchise agreement shall be governed by the laws of the state of New Jersey.

In the years after the parties formed this initial agreement, Futuredge entered into three other franchise agreements with Huntington for franchises to be located in Escondido, California (November 1996), Carlsbad, California (March 2000), and Irvine, California (November 2001). Each of these agreements contained provisions similar to those previously mentioned in the Poway Agreement. All the agreements also included a provision establishing an in-term covenant against competition, which prohibited Futuredge and its owners from owning or operating an exam preparation business other than the Huntington Learning Center franchises granted by Huntington.

At some point during the ten years after the parties signed the initial agreement - though the parties' submissions do not make clear the exact date - allegations of fraud and malfeasance arose against Huntington. Huntington franchisees across the nation alleged Huntington failed to administer an advertising fund in accordance with the agreements. The franchisees pursued these claims in arbitration and settled on behalf of all

4

Huntington franchisees in February 2005.  However, according to Futuredge, each individual franchisee maintained claims for consequential damages based on Huntington's failure to administer the ad fund.

On or about April 20, 2004, Huntington informed Futuredge that the Poway Agreement would soon expire and that Huntington desired to see the agreement renewed.  Futuredge informed Huntington that it would not grant the general release as required by the original agreement and that if Huntington maintained that demand Futuredge would not renew.  Futuredge later declared its intent to remain at the Poway location and to continue to operate as a Huntington Learning Center without renewing.  This prompted Huntington to officially terminate the agreement via a letter dated September 29, 2004.  However, Futuredge remained at the Poway location and claims to be fulfilling all obligations under the agreement, including sending royalty checks to Huntington that are not being cashed.

On September 1, 2004, Huntington filed this action in anticipation of Futuredge breaching the contract and the covenants not to compete.  One week later Futuredge filed a lawsuit against Huntington in California state court based on the same issues.  Huntington removed that action to the Southern District of California.  Futuredge then moved this Court to transfer this case to be joined with the action in California.

Before this Court decided that motion, the California action ran its course.  On October 1, 2004, the Southern District of California denied Futuredge's motions for a Temporary Restraining Order and a Preliminary Injunction.  On January 11, 2005, Huntington filed a motion to dismiss which was not opposed, and the California suit was officially dismissed on January 14, 2005.  On February 22, 2005, Huntington filed this motion for a preliminary injunction.  On March 9, 2005, Futuredge voluntarily withdrew its venue motion and waived all objections to venue.

Huntington now seeks a preliminary injunction to prohibit Futuredge from operating the Poway Learning Center.  Huntington claims that such operation violates a post-term covenant against competition, three in-term covenants against competition, and all covenants prohibiting use of Huntington's confidential information.[1]

## II.  CHOICE OF LAW STANDARD

This case involves a New Jersey plaintiff and a California defendant.  Consequently, the Court must determine whether the law of New Jersey or the law of California will apply to each

---

[1] A post-term restrictive covenant prohibits competition after the franchise agreement ends for whatever reason.  An in-term restrictive covenant prohibits competition while the franchisee is still operating a Huntington franchise.  The confidential information covenant prohibits the franchisee from divulging or using for the benefit of another Huntington's confidential information both during the franchise term and after it ends.

6

issue.

Because this is a diversity case, the Court bases its choice of law determinations on the law of the forum state. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496-497 (1941); Shuder v. McDonald's Corp., 859 F.2d 266, 269 (3d Cir. 1988). Here, all four franchise agreements contain a provision declaring that New Jersey law should govern. (See, e.g., Poway Agmt. ¶ 18.06.)

"Ordinarily, when parties to a contract have agreed to be governed by the laws of a particular state, New Jersey courts will uphold the contractual choice if it does not violate New Jersey's public policy." Instructional Sys., Inc. v. Computer Curriculum Corp., 130 N.J. 324, 341 (N.J. 1992) (internal citations omitted). This means that New Jersey courts honor choice of law provisions unless (a) the chosen state has no substantial relationship to the parties or the transaction and the parties have no other reasonable basis for their choice, or (b) application of the chosen law would be contrary to a fundamental public policy of another state with a materially greater interest and whose law would be applicable in the absence of an effective choice of law by the parties. Id. at 342 (citing Restatement (Second) Conflict of Laws § 187); N. Bergen Rex Transport v. Trailer Leasing Co., 158 N.J. 561, 568 (N.J. 1999). Where one of the parties is headquartered in the chosen state, as here, the substantial relationship test is satisfied. See id. at

7

569; Instructional Sys., 130 N.J. at 343.

Therefore, in order for the choice of law provision to be overridden and for California law to govern, the Court must find that application of New Jersey law would be contrary to a fundamental policy of California, that California has a materially greater interest than New Jersey in a particular issue, and that under Section 188 of the Restatement (Second) of Conflicts of Laws California law would apply. Newcomb v. Daniels, Saltz, Mongeluzzi & Barret, Ltd., 847 F. Supp. 1244, 1248 (D.N.J. 1994).

The question presented to the Court is whether Futuredge continues to operate the Poway center as a holdover or as an unauthorized competitor. Futuredge contends that it is operating the Poway Center as a holdover under the terms of the Poway Agreement. Huntington contends that Futuredge voluntarily opted not to renew, thereby precluding it from obtaining "holdover" status, or in the alternative that Huntington terminated the franchise in accordance with the agreement.

Under New Jersey common law, a franchisor cannot refuse to renew a franchise agreement without good cause.[2] Shell Oil v.

---

[2] This rule was later incorporated into the New Jersey Franchise Practices Act ("New Jersey Act") N.J.S.A. 56:10-7. The New Jersey Act, however, only applies to franchises that contemplate the establishment of franchisee's "place of business in New Jersey." N.J.S.A. ¶¶ 56:10-3(a),-4; Cooper Distributing Co. v. Amana Refrigeration, Inc., 63 F.3d 262, 268-69 (3d Cir. 1995).

8

Marinello Co., 63 N.J. 402, 410-11 (N.J. 1973). "Good cause" means a failure by the franchisee "to substantially perform his obligations" under the franchise agreement. Id.; see also Westfield Centre Serv., Inc. v. Cities Serv. Oil Co., 86 N.J. 453, 467, 469 (N.J. 1981) (franchisor cannot terminate a franchise simply "for bona fide economic reasons in good faith" without compensation). Because the Poway Agreement provides for the application of New Jersey law, Huntington must demonstrate good cause for its failure to renew the contract.

Huntington, however, claims that California law should apply. The Court disagrees. One of the requirements to overriding the parties' choice of law provision is a finding by this Court that the application of New Jersey law conflicts with a fundamental public policy of California. California has its own statutory framework to regulate franchise relationships. See California Franchise Relations Act ("California Act"), Cal. Bus.

---

To satisfy the "place of business" requirement, the franchisee must maintain a "fixed geographical location at which the franchisee . . . offers for sale and sells the franchisor's services." N.J.S.A. ¶¶ 56:10-3(f). The franchisee must offer the services from a particular location, a particular place of business. Greco Steam Cleaning, Inc. v. Associated Dry Goods Corp., 257 N.J. Super 594, 599, 608 A.2d 1010, 1013 (N.J. Super. Ct. Law Div. 1992). Thus, "there must be a sales location in New Jersey. Mere distribution through an office or warehouse would not qualify." Instructional Sys., 130 N.J. at 349.
    Futuredge does not meet the test for establishing a franchise under the New Jersey Act. Futuredge does business in California and does not maintain a sales location in New Jersey. Therefore, the New Jersey Act does not apply to this case, and the Court will apply New Jersey common law.

& Prof. Code § 20000 et seq.  The purpose of the California Act is to protect franchisees.  See JRS Prods., Inc. v. Matsushita Elec. Corp., 8 Cal. Rptr. 3d 840, 845, 115 Cal. App. 4th 168, 174 (Cal. Ct. App. 2004).  In this instance, application of the New Jersey common law protects the franchisee, Futuredge, from termination without good cause.  Because the New Jersey law is consistent with California's policy of protecting franchisees, the Court will apply New Jersey law to the determination of whether Futuredge is a holdover.[3]

III. PRELIMINARY INJUNCTION STANDARD

There are four factors that the Court must consider in ruling on a motion for preliminary injunction: (1) the likelihood that the moving party will succeed on the merits; (2) the extent to which the moving party will suffer "irreparable harm" without injunctive relief; (3) the extent to which the nonmoving party will suffer irreparable harm if the injunction is issued; and (4) the public interest.  American Tel. & Tel. Co. v. Winback & Conserve Program, Inc., 42 F.3d 1421, 1427 (3d Cir. 1994).  The Court will consider each of these factors in turn.

    A.    LIKELIHOOD OF SUCCESS ON THE MERITS

        1.    Status of Poway Center

---

[3] The Court also notes that, as franchisor, Huntington drafted the choice of law provision.  Huntington should not now be allowed to disclaim a provision that it drafted merely because the law chosen is unfavorable to the franchisor.

Huntington claims that New Jersey's good cause requirement does not apply to this case because Huntington did not terminate or refuse to renew the Poway Agreement; rather, Futuredge voluntarily allowed the agreement to expire.  On June 8, 2004, Futuredge sent a letter to Huntington that stated, "[A]bsent a reconciliation . . . I believe I have no alternative but to sever my relationship with Huntington in the most expeditious and effective manner."  (Letter from Hanson to Huntington and Liskiewicz of 6/8/04, Liskiewicz Decl., Ex. A, at 1.)  No such reconciliation occurred.  In a letter dated September 27, 2004, the date of expiration of the Poway Agreement, Futuredge's counsel wrote to Huntington that it would continue as a holdover: "Continuing under the Huntington name in Poway provides more options for potential resolution of our disputes on an amicable basis, and, if Huntington's claims are sustained, 'holding over' will be deemed the lesser violation."  (Letter from Purvin to Pressman of 9/27/04, Liskiewicz Decl., Ex. B, at 1.)  Huntington contends that these two letters confirm that Futuredge voluntarily chose not to renew and that Futuredge continues to operate in violation of numerous restrictive covenants.

Despite the letters from Futuredge, the Court finds that Futuredge did not voluntarily allow the Poway Agreement to expire.  Futuredge believed that it had valid legal claims against Huntington in light of Huntington's alleged failure to

11

make contributions to an advertising fund for the franchises. The Poway Agreement, however, contains a general release of all past claims against Huntington. Futuredge found the release to be an unfair prerequisite to renewal, particularly because the release was unilateral. Nevertheless, Huntington refused to waive the general release. Therefore, Futuredge was forced into two options: renew the agreement with the general release, thereby waiving all past claims against Huntington, or allow the agreement to expire and attempt to holdover. Huntington argues that Futuredge's decision to allow the agreement to expire can be distinguished from an explicit termination by Huntington; but this is a distinction without a difference. Huntington's insistence on the unilateral release coerced Futuredge into allowing the Poway Agreement to expire.

Because Huntington caused the termination of the Poway Agreement, Huntington must demonstrate good cause for that termination. Citing Stradling v. Southland Corporation, 924 F. Supp. 38 (M.D. Pa. 1996), Huntington argues that the general release is fully enforceable. In Stradling, the franchisor required the franchisee to consent to a release of claims prior to transferring their store. Id. at 39. The franchisee sued, arguing that the requirement violated the New Jersey Franchise Practices Act ("New Jersey Act"). Id. The court held that the New Jersey Act did not apply to the out-of-state franchisee. Id.

12

at 40.  In dicta, court concluded that the general release was enforceable because it provided only a release of liability for past claims, not for future claims.  Id. at 41.  Huntington argues that because the Poway Agreement contemplates only a release of past claims, the release requirement should be enforced.

Stradling is distinguishable from this case for a number of reasons.  First, the trial court's conclusion that the release was enforceable was dicta and not binding precedent.  Second, the court applied the New Jersey Act to the franchise, whereas the New Jersey common law applies here.  Finally, and most importantly, the provision at issue in Stradling called for a *mutual* release of claims.  Id. at 41.  In this case, the release is unilateral, requiring only Futuredge to release its claims against Huntington.  The purpose of a general release in a franchise agreement is to allow the parties to continue their relationship without the hindrance of litigation over past claims.  The release in the Poway Agreement fails to fulfill this purpose because it allows Huntington to bring past claims against Futuredge.  To require Futuredge to adhere to a release but not require Huntington to reciprocate would be fundamentally unfair.

In addition, Futuredge's refusal to consent to the general release does not constitute good cause under New Jersey common law.  Only a franchisee's failure to substantially perform its

obligations under the agreement constitutes good cause. See Shell Oil Co. v. Marinello, 63 N.J. at 408. Huntington has made no allegations that Futuredge has failed to substantially perform its obligations under the Poway Agreement. Therefore, Huntington did not have good cause to force an expiration of the Poway Agreement.

Accordingly, Futuredge is operating the Poway center as a holdover franchisee. The remaining claims put forth by Huntington will be decided in light of this determination.

### 2.  Restrictive Covenants

The Poway Agreement contains a covenant preventing the franchisee from operating a competing business within 25 miles for three years after the franchise agreement ends - although Huntington reduced the scope to one mile and one year. In addition, Futuredge's other three franchises have agreements that contain in-term restrictive covenants not to compete. Finally, all four franchise agreements contain covenants not to use Huntington's confidential information outside the operation of the franchise. Huntington claims that Futuredge has violated each of these restrictive covenants.

Huntington cannot demonstrate a likelihood of success on the merits for any of these claims. Because Futuredge is operating the Poway center as a holdover franchisee, it cannot be operating a competing business, nor can it be misappropriating confidential

information. Futuredge continues to operate the Poway center under the Huntington name and in accordance with the Poway Agreement. Futuredge continues to send royalty payments to Huntington each month. Huntington does not allege that Futuredge has done anything outside of operating the Poway center after the expiration of the franchise agreement; however, the Poway Agreement explicitly provides for this holdover arrangement. Therefore, violation of the restrictive covenants not to compete is impossible.

    2.    <u>IRREPARABLE HARM TO PLAINTIFF HUNTINGTON</u>

At this stage, the Court does not find irreparable harm to Huntington. Grounds for a finding of irreparable harm include loss of good will, misappropriation of trade secrets, and confusion. <u>Jiffy Lube</u>, 834 F. Supp. at 692. Huntington has not demonstrated that any of these harms have occurred.

Futuredge continues to operate the business under the Huntington name. The trade secrets and confidential information that Huntington hopes to protect are being used by a holdover franchise, not by a competing entity. Further, Futuredge continues to pay its royalty fees, so Huntington cannot claim that it is losing money from the arrangement. Thus, Huntington cannot claim it will suffer irreparable harm absent issuance of the preliminary injunction.

    3.    <u>IRREPARABLE HARM TO DEFENDANT FUTUREDGE</u>

Futuredge may suffer irreparable harm if the Court issues a preliminary injunction. The Poway center constitutes one-fourth of Futuredge's franchises. Issuance of the preliminary injunction would deprive Futuredge of one-fourth of its revenue at least until the end of this litigation. Moreover, a preliminary injunction prohibiting the operation of the Poway center risks permanently damaging the good will of Futuredge's customers in the area. Maintenance of the status quo at this stage would allow Futuredge to remain at the Poway center and still provide Huntington with its monthly royalty fees.

4. PUBLIC INTEREST

The Court sees no public interest that will be harmed by the denial of this injunction. Denial of the injunction serves only to maintain the status quo until the completion of litigation.

IV. CONCLUSION

For the reasons previously stated, the Court **denies** Huntington's request for a preliminary injunction.

An appropriate Order follows.

Dated: July 5, 2005

                                             /s/ William G. Bassler
                                          WILLIAM G. BASSLER, U.S.S.D.J.